IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW-JERSEY,

AT OCTOBER TERM, 1849.

---

## THE DELAWARE AND RARITAN CANAL COMPANY v. LEE.

1. An actionable nuisance may be caused by an act perfectly lawful in itself when the nuisance complained of is only a consequence of that act, as if a canal constructed by authority of law across land of A., by his consent, throw backwater on land of B., it is an actionable nuisance.

2. If one part of a farm or tract of land be taken by a canal company for a canal, and the value thereof and the damage done to the farm by taking it be assessed by commissioners, or if the owner convey to the company such part for the purpose of their canal, the owner of the farm is not thereby barred from recovering the damages done to his farm in consequence of the construction of the canal on another part of the route distinct from his farm.

3. A conveyance of land by the owner to a company for a canal, or the assessment of the value and damages by commissioners, only bars the recovery of such damages as naturally and necessarily arise from the construction of a canal there; but not such damages as arise from an unskilful or improper construction, as the stoppage of a watercourse that might by a proper culvert have been left open.

4. The statute of limitations is no bar to allowing damages done within six years, by a nuisance erected before the six years, in cases where the nuisance has not been so long continued as to raise presumption of a grant.

---

This was an action on the case, originally commenced in the Mercer circuit, by Lee against the Canal Company, at June term, 1848. The declaration stated was for a misde-

meanor in obstructing the flow of the water in a watercourse which flowed through the plaintiff's close, and thereby throwing back the water on the plaintiff's close, and injuring it.

The defendants pleaded the general issue and the statute of limitations.

On the trial of the cause, it appeared that the water from the plaintiff's meadows flowed upon the lands of an adjoining proprietor into Watson's creek, and were thence discharged into the river Delaware. The canal was constructed across Watson's creek, the water of the creek being carried under the canal by means of a culvert. The injury to the plaintiff's land was occasioned, according to the testimony of his witnesses, by the defective construction of the culvert; its capacity was not sufficient to *vent* freely the waters of the creek, which were thus obstructed in their accustomed course, and penned back upon the lands of the plaintiff. The canal does not cross the creek upon the plaintiff's land, but upon the land of an adjoining proprietor lower down the river. At the time the canal was constructed the plaintiff's farm was owned by Joshua Wright. Wright, by deed bearing date on the first day of February, A. D. 1834, conveyed one acre and three-fourths of land, upon which the canal is constructed through the plaintiff's farm, to the Canal Company. The deed contains a release to the company of the obligation imposed upon them by the charter to build a bridge across the canal for the convenience of the plaintiff's farm. On the first of April, 1836, Wright conveyed the farm to the plaintiff. The culvert was constructed in the year 1833, and completed in the fall of that year.

The Circuit Court charged that the plaintiff below was entitled to recover, notwithstanding the deed from Wright, all damages done within six years before the commencement of the suit.

Argued before the CHIEF JUSTICE, and RANDOLPH and OGDEN, Justices, by *J. S. Green* and *Field*, for plaintiffs in error, and *Beasley* and *W. Halsted*, for defendant in error.

*J. S. Green* and *Field*, for plaintiffs in error.

1. An action for nuisance can only be maintained where the act complained of is unlawful; here the construction of the canal down Watson's Creek is a lawful act authorized by the charter of the company. Sec. 12 of Charter, &c., *Harr. Laws* 278.

2. It is clear, from the evidence in the case, that the damage is only on account of the insufficiency of culvert to discharge the water arising from rains or freshets; it is sufficient to discharge all the water from springs or ordinary sources.

3. The deed from Wright to the company for his lands taken, covers all damages done by the construction of the canal. Lee, who took by subsequent conveyance from Wright, excepting the one and three-fourths acres conveyed to Canal Company, stands in the position of Wright. And by the deed, Wright was in the same situation, as to his right to recover, as if the lands had been assessed by commissioners. *Van Schoick* v. *Del. and Rar. Canal Co., Spenc.* 249, and *Brearley* v. *Del. and Raritan Canal Co., Ib.* 236, show that an assessment of commissioners includes all damages arising from construction of canal. *Zimmerman* v. *Union Canal Co.,* 1 *Watts & Ser.;* 1 *Suppl. U. S. Dig.* 504, § 122.

If such damages are caused by the construction of the canal, no matter *how*, they ought to have been included in an assessment by commissioners, and would be released by the deed. The deed includes them if done to the same tract of which part was conveyed by the deed. We do not contend that a deed for part of one tract would cover damages done to a separate tract or parcel held by the same owner.

*Beasley* and *W. Halsted,* for defendant in error.

1. The act complained of is a wrongful act, not authorized by the charter of this company. It was not *necessary* for the construction of their canal to stop up this stream, they could cross it by a *sufficient* culvert. If not necessary for the construction of a public work, the charter *does not*, and the legislature *could not*, grant this power.

2. The deed does not affect this action, it is for land nearly

two miles distant from the obstruction complained of, and the obstruction is on no part of the tract of Wright, the grantor. That deed grants the land described in it, and, according to the decisions in *Van Schoick's* and *Brearley's* cases, takes away all right of action for damages occasioned by the lawful construction of the canal on *that land,* but it does not give the company a right to damage the plaintiff's land by the improper or unlawful construction of their canal elsewhere.   Otherwise a conveyance or an assessment for the value of land taken at the end of a farm, would at any time enable the company to stop up and destroy a stream which drove a mill at the other end, and that might be worth thousands of dollars.

3. This deed releases no damages, it only conveys certain lands therein described.   In the company's charter, value of lands and damages are two distinct matters, one may be paid for, and the other not, and no release can arise here by implication ; there is an express release as to the right of a bridge, and " *enumeratio unius est exclusio alterius.*"

The CHIEF JUSTICE.

The injury complained of by the plaintiff is a nuisance created by the obstruction of a natural watercourse by the defendants, and penning the waters back upon the plaintiff's land.   The injury is in its nature actionable.   Three questions are raised by the plaintiffs in error upon the bill of exceptions.

1. Are the defendants liable for the injury.

2. Is the plaintiff in a situation to demand remuneration.

3. Is the claim barred by lapse of time.

1. It is insisted that the Canal Company are not liable for any nuisance necessarily resulting from the construction of the canal ; that a nuisance necessarily implies a violation of law ; that the act complained of was done under the authority of an act of the legislature, was done by sanction of law, and that the company are not liable, civilly or criminally, for the consequences of such act.   It is true that a party is not liable criminally for an act done by authority of law.   *King* v. *Pease,* 4 *Barn. and Ad.* 30.

Nor, as it seems, is he civilly liable for such injuries as are not the natural, direct, or necessary consequences of such act. *Bord. and So. Amb. Turn. Co.* v. *The Camden and Amb. Railroad Co.*, 2 *Harr.* 314.

But it is by no means true that an act constituting a nuisance must necessarily be in itself unlawful. On the contrary, acts which in themselves are perfectly lawful may, and frequently do, in their consequences, work actionable injuries to others. To construct a mill dam upon one's own property is a perfectly lawful act; but if by means of such dam the natural current of the water is obstructed and thrown back upon the lands of another, it becomes actionable as a nuisance. *Sic uter tuo ut alienum non laedase*, is a sound maxim in law as well as in morals. In the present case the construction of the canal by the defendants was a lawful act, but the consequence of that act, the penning back of the water upon the plaintiff's land, was an infringement of his rights, for which he is entitled to remuneration in damages. It is well settled, that an injury to private property resulting from an act authorized by law, and done in pursuance of the statute, cannot be justified, unless the act were done by one acting as an agent, or in behalf of government, or to affect a public interest. And the statute is no bar to an action for damages resulting from such act, unless it provide a different mode of compensation. *Crittenden* v. *Wilson*, 5 *Cowen* 166; *Rogers* v. *Bradshaw*, 20 *J. R.* 735; *Gardner* v. *Trustees of Newburg*, 2 *J. Ch. R.* 162; *Stevens* v. *Middlesex Canal*, 12 *Mass.* 466; *Bassett* v. *Johnson*, 2 *Green's Ch. Rep.* 417; *Sinnickson* v. *Johnson*, 2 *Harr.* 129.

This doctrine has been recognized as applicable to this company in the case of *Ten Eyck* v. *The Del. and Rar. Canal Co.*, 3 *Harr.* 200. The present case, upon this point, is directly within the principle of that decision, and must be controlled by it.

2. Is the plaintiff in a situation to demand remuneration.

At the time of the construction of the canal, the plaintiff's farm was owned by Joshua Wright. The plaintiff became the purchaser after the culvert over Watson's creek, which creates

the difficulty, was completed. The purchaser, it is clear, can stand in no better position than the vendor, nor do I apprehend that his situation is any worse. In fact, as to all damages resulting after the title passed, he stands in the shoes of the vendor. The case is to be considered, therefore, as if Wright himself was the plaintiff. Could he maintain this action ?

It is said that the damages of which the plaintiff complains result directly from the construction of the canal, and that, a mode of compensation for these damages being provided by the charter, no action will lie; and in support of this position, the decision of this court in *Vanschoick* v. *The Del. and Rar. Canal Co., Spenc.* 249, is relied upon. Justice Nevius, by whom the opinion of the court in that case was pronounced, said : " I believe that the legislature intended all damages accruing to the owner of lands from any and every physical effect produced by the construction and use of the canal, whether the same were clearly to be seen and easily estimated before the construction of the canal, or whether they were uncertain and doubtful results from such construction. I believe that the legislature intended that the commissioners should assess all damages sustained by the owner, or likely to be sustained by him, from the construction and use of the canal, whether they arise from the alteration or destruction of a public or private way, the exclusion or the overflowing of waters, the alteration or change in the current of streams or in the destruction of crops, the deterioration of adjacent lands by leakage, or whatever other damage may result from the natural and physical effects produced by the canal; *provided always*, that the canal shall be constructed according to the provisions of the act and with proper care and skill." This language is certainly very comprehensive, and its terms may include the damages now sought to be recovered. It is, however, a well settled rule, that the language of a judicial opinion is always to be construed in reference to the case under consideration. As applied to the facts of that case, this language may be taken as strictly proper and as sufficiently guarded. In that case the plaintiff had brought his action for damages, resulting in part or in whole from the construction

and use of the canal across the lands of the plaintiff, for leakage from the canal and injuries to the soil, by shutting out the direct flow of the freshet of the river, and changing the currents of the water. But the learned judge, I apprehend, never intended to say that the damages awarded by the commissioners to the landholder for the construction of the canal included damages arising from the construction of a work at a remote point in no wise dependent upon or connected with the construction of the canal across the plaintiff's land. The damages complained of by the plaintiff in the present case do not result from the construction and use of the canal across his land. They have not the remotest connection with, or dependence upon that act, but result from the act of the company in obstructing a stream at a point remote from his premises. These are not, in the language of the judge, uncertain and doubtful results from the construction of the canal, much less such as were to be clearly seen and easily estimated. Such damages could by no possibility have been foreseen or estimated by the commissioners, nor do I apprehend that they could have been within the contemplation of the legislature. It never could have been the design of the act, that if the company remunerated the landholder for damages sustained in the construction of the canal across his farm, they were authorized, at a remote point in its course, to divert a water course from a valuable mill seat, or to submerge his meadows by penning back the water from below. I am confirmed in the opinion, that no such inferences were designed to be drawn from the language of the court in the case of *Vanschoick* v. *The Del. & Rar. Canal Co.*, because the same learned judge who delivered the opinion in that case, on another occasion held this language in regard to the charter of company : " The whole scope of their charter indicates clearly that the legislature did not mean to interfere with private and vested rights without providing a recompense to be paid by the company, and not by the state. And if injury or damage has accrued to the private property or rights of others, which could not be foreseen or anticipated, and therefore not provided for in the charter of the company, this constitutes no reason why the party thus

injured should not be compensated.   *Ten Eyck* v. *The Del. and Rar. Canal Co.*, 3 *Harr.* 200.

In the present case damages were not assessed by commissioners; but, on the first day of February, 1834, Wright, who then owned the farm, conveyed one and three-quarter acres, upon which the canal was constructed across the farm, to the company.   The deed is silent as to the object of the conveyance; but, as the canal was already built, it may be presumed that the conveyance was made for the express purpose of the canal.   If this be conceded, and it be also conceded, for the sake of the argument, that the conveyance of the land for the purpose of a canal operated as a release of all damages resulting from its construction, for which compensation is provided in the charter, it is abundantly obvious that the damages now sought to be recovered are neither within the contemplation of the deed or the act of incorporation.   If the owner sold and conveyed the land for the purpose of a canal, it may fairly be presumed that he took into consideration all the damages which might result from the construction of the canal through his farm, and that he received a price which in his estimation would cover such damages.   The deed, therefore, may fairly be construed as a release of such damages.   *Brearley* v. *The Del. and Rar. Canal Co.*, *Spenc.* 238.

But can it be seriously contended that, in conveying land for the use of a canal across his farm, the grantor took into consideration damages resulting from the construction of the canal at another and a different point, and that the conveyance operates as a release of such damages?   The question carries with it its own answer.   No such damage could have been within the contemplation of the parties.

But another and decisive answer to the objection is, that the damages of which the plaintiff complains are not the natural or necessary result of the construction of the canal, on the contrary the difficulty arises from the imperfect or defective construction of a culvert through which Watson's creek passed under the canal.   The case, therefore, falls directly within the exception stated by the court in *Vanschoick* v. *The Canal Co.* There is no evidence, or even averment, that the work might

not have been constructed so as freely to vent the water of Watson's creek without the least difficulty or injury to the works of the defendants.

The statute of limitations is no bar. The erection was made in 1833. The action was commenced in 1848. No prescriptive right had been acquired by the company to flow the plaintiff's land, nor had the nuisance been continued for such length of time as to raise the presumption of a grant. The action is not brought for the erection of the culvert, but for the injury resulting from the overflow of water. It is a continuing nuisance, for which it is well settled that a plaintiff may receive damages for a period not exceeding six years, though the obstruction which occasioned the injury is of much longer continuance. The point was settled by this court by the decision in *Wright* v. *The Canal Co.*, 1 *Zabr.* 469.

RANDOLPH, J. This action was brought for consequential damages arising to the property of the defendant in error, as alleged, from the embankment of the canal, the improper construction of the canal itself, and a culvert some half a mile, or more, below the land of Mr. Lee, the culvert, as insisted on by the plaintiff, being too small to vent the water as the natural channel did formerly ; and owing to this cause, and to the embankment keeping the water on the meadow for a longer time than it used to remain, he says that his meadow is greatly injured, and that he has sustained damage to a large amount. On the trial it appeared that the canal embankment and culvert were finished, as they have existed ever since, in 1833, and that, in February, 1834, Joshua Wright owned the premises now belonging to Mr. Lee, and through which the canal passes ; and at that time he and his wife, by deed, conveyed to the defendants, in consideration of the sum of three hundred dollars, the acre and three-quarters of land taken by the Canal Company in its passage through Mr. Wright's, now Mr. Lee's farm. On the trial it was insisted that this deed constituted a complete bar to the present action, and the court below, willing to have the matter settled by this court, directed the jury to consider that point as overruled, and to render a verdict for

such damages as the plaintiff " may have proved to have sustained within six years next before the commencement of this suit arising from the insufficiency of the culvert, notwithstanding the deed from Mr. Wright."

By the thirteenth and fourteenth sections of the charter of the Canal Company, (2 *Harr. Laws* 278) it is provided, that " when the company and the owner of lands or materials required " cannot agree " for the use or purchase thereof, and damages sustained," commissioners are to be appointed " to make a just and equitable estimate or appraisement of the value of the same, and assessment of damages," who are to report what sum is to be paid " for such land or materials and damages aforesaid ;" and in case of dissatisfaction with this report, a jury is to be empannelled " to assess the value of the said land or materials and damages sustained." When there has been an agreement between the parties respecting the subject matter, it is of the same force and extent as the report of commissioners or verdict of a jury, unless there is a restriction in the agreement itself; and when that agreement is in the form of a deed for the land taken by the company, the compensation in the deed is to be taken as the value fixed by the parties for the land and damages, unless the contrary appears. *Brearley* v. *The Del. and Rar. Canal Co., Spenc.* 236. The deed offered in this case is for an acre and three-quarters of land, and the consideration three hundred dollars, a sum far beyond the highest estimate made of the lands conveyed, of course the deed and its consideration is to be considered as embracing both land and damages. But what damages does the deed or the statute embrace ? Were this entirely an original question, or its investigation absolutely necessary to settle the present case, we might inquire whether the term " damages," in the statute, was intended to embrace all damages, direct and consequential, (to the whole, or what portion of the owner's property) that might arise from the construction and use of the canal ? or whether the term was to be limited to such damages only as necessarily resulted to the owner's farm or tract of land, from the taking a portion thereof for the use of the company, or for taking the owner's " materials " in

constructing the canal? For the term damages applies to the same extent to materials as to lands, so far as the nature of the property will admit. But this statute has received a judicial construction by this court in the case of *Vanschoïck* v. *The Del. and Rar. Canal Co., Spenc.* 249. There the charge was, that the company had constructed their canal in so unskilful a manner that the water leaked through and destroyed the plaintiff's grass and injured his land, and that where the waters of the Delaware formerly flowed off in a natural course, they were now obstructed by the banks of the canal, and confined until enabled to pass off at the lower extremity of the embankment; and that, owing to the same cause, the waters of Crosswicks creek were changed in their flow over the plaintiff's meadow to his injury. This charge is substantially the same as that contained in the plaintiff's declaration, though in this it is more specifically stated, and the construction of the culvert is put forth more prominently as the cause of the injury. In truth the property in each case lies in the same vicinity, and the injury resulted in a great measure from the same cause. In that case the court decided that these damages were all embraced in the statute, and the plaintiff was prohibited from recovery for any or all of them, because there had been in his case an assessment under the statute, although all evidence in regard to these damages was rejected by the judge who tried the assessment. This being a strong case, embracing the same points involved in the present action, we must consider it as *res judicata* in this court. "I believe," says the learned judge who delivered the opinion of the court, "that the legislature intended that the commissioners should assess all damages sustained by the owner, or likely to be sustained by him, *from the construction and use of the canal*, whether they arise from the alteration or obstruction of a public or private way, the exclusion or the overflowing of waters, the alteration or change in the current or stream, or in the destruction of crops, the deterioration of adjacent lands by leakage, or whatever other damages may result from the natural and physical effects produced by the canal; provided always, the canal shall be constructed ac-

cording to the provisions and with proper care and skill." And we may infer, from the course that this suit has taken, that it was intended not to contest the extent of that decision, so much as to bring the case within the proviso laid down by the court, *viz:* that the canal, or rather the culvert, was 'not constructed " with proper care and skill." On this point there was an abundance of evidence, as also on the question, whether any, and if any, what damages resulted therefrom; the testimony was contradictory, but the whole constituted a question of fact, which was left to the jury, who decided in favor of the plaintiff, and there the matter must rest, so far as this court has any thing to do with this part of the case. But there is another point, which is urged upon the court with some force, and that is, that this deed was executed about a year after the canal and the culvert were constructed, and there has been no alteration of either from that period to the present. Why was the making of this agreement or deed between the parties deferred till after the construction of the works? was it in pursuance of some previous agreement, and only postponed through inadvertence, or was it by design?

We have only the deed and the date of its execution before us, and a fair inference to be drawn from these is, that the " owner " of the land waited to see what might be the " damages," and therefore included the same in the consideration. But still, giving the deed the most liberal construction, it would cover no more damages than would be embraced in an assessment of commissioners or a verdict of a jury under the charter, and as these would not embrace damages arising from the misconstruction of the canal or the insufficiency of the culvert, on which latter ground this case was put before the jury, of course the deed forms no bar to the present action or to the damages claimed and presented by the jury. The question, whether the statute of limitations applies to the continuance of a nuisance, when the cause thereof is of more than six years' standing, was the direct point decided by the court in the case of *Wright* v. *The Del. and Rar. Canal Co.*, where it was considered that the statute did not apply. I think the judgment must be affirmed

OGDEN, J. A judgment was rendered in the Circuit Court of the county of Mercer between these parties, upon the verdict of a jury, for the sum of seven hundred and ninety-seven dollars and forty-five cents damages, besides costs of suit; which judgment has been removed, by the defendant therein, into this court by a writ of error.

The action was instituted, by a process returnable to the term of June, 1848, for the recovery of damages, alleged to have been sustained by Aaron Lee, between the 17th of March, 1842, and the day of the commencement of the suit, in his tract of land, in the township of Hamilton, in the county of Mercer, from the effects of certain works and devices, done and constructed by the Canal Company in and over the natural outlets of Abbot's creek and Watson's creek, which theretofore emptied, without interruption, into the Delaware river.

The defendants below pleaded the general issue and the statute of limitations, and issues were joined thereon.

It having been conceded, upon the argument here, that the second issue should follow such decision as this court should make upon a similar point raised in the case of Robert Wright against the Canal Company, then under advisement, our attention is limited to the consideration of the charge given to the jury by the judge of the Circuit Court upon the legal effect of two deeds which the defendants had given in evidence.

The case shows that the Canal Company, by virtue of the authority of their charter, had located their canal, its locks and other devices, between the city of Trenton and Bordentown, passing in its line, for about seven chains, over lands of one Joshua Wright; that, at some distance below the premises of Mr. Wright, the line crossed Watson's creek and Abbot's creek; that, in making their canal, the company had filled up the mouth of Abbot's creek, and had carried their canal, by an aqueduct, over a culvert, which they constructed in Watson's creek, and that they also had connected the two creeks by an artificial passage. The culvert in Watson's creek was completed in August or September, 1833.

By a deed, dated the first, and acknowledged on the twenty-

eighth of February, 1834, Joshua Wright, with his wife, for the consideration of three hundred dollars, sold and conveyed unto "the Delaware and Raritan Canal Company" a certain lot of land, described therein, as situate on the route of the canal, and as in the use and occupation of the company, beginning at a fixed point on the southerly side of the canal, running thence, the four courses and distances expressed in the deed, to the point of beginning, embracing one and three-quarter acres.

It contains the usual covenants of seizin and of warranty of the *described* premises, and likewise a release of all right or claim upon the company for a bridge over the canal.

That strip was a part of a farm of two hundred and thirty-four acres, which the said Wright, with his wife, afterwards, on the first day of April, 1836, conveyed to Aaron Lee, the plaintiff below, for the consideration of eleven thousand five hundred dollars; the deed containing an exception thereout of a parcel of land, conveyed to "the Delaware and Raritan Canal Company," containing about one and three-quarter acres. Those two deeds were received in evidence.

The *gravamen* of the plaintiff's action was, that the Canal Company, by their works in these creeks, had so interrupted the natural flow of waters through them into the Delaware river, that the water was penned up upon his meadows lying above, his herbage thereby destroyed, and he greatly damaged.

The defendants relied for a legal justification upon the deed from Joshua Wright to them, insisting that, as the plaintiff had derived his title from the same party subsequent to the erection of the canal, and *after* the execution and delivery of *their* deed, he stood towards them in the same relation as Wright would have done, had he retained the farm.

The judge of the Circuit Court pronounced the case to be not free from doubt, but nevertheless he instructed the jury, that they should consider the defence founded on the deed as *untenable*, and that the plaintiff was entitled to recover such damages as he had proved he had sustained within six years next before the commencement of the suit arising from the in-

sufficiency of the culvert, notwithstanding the deed from Joshua Wright to the company, suggesting that the legal effect of that deed could be settled thereafter.

A bill of exceptions was sealed to this charge, upon the prayer of the defendants.

The defendants now rely for authority in support of their position upon two cases adjudicated in this court. The one is that of Brearley against "the Delaware and Raritan Canal Company," reported in *Spencer* 236, the other that of Van Shoick against the same company, reported in the same book, page 249.

In the former case, the plaintiff having sold and conveyed to the company, for a fixed consideration, a parcel of land situate on the route of the canal for the purpose of their cutting and constructing the canal, through which strip it was afterwards cut with his consent, prosecuted the company for the recovery of damages sustained by him, in not having a bridge erected by them, under the thirteenth section of their charter, for connecting the two points of his farm, which were intersected by the canal.

Their conveyance and the accompanying facts were pleaded by the defendants, and the court, on demurrer, decided that the question was controlled by the *contract* of the parties, without reference to the charter; that as the land was sold for the purpose of having the farm *divided* by the canal, the plaintiff was presumed, in fixing his compensation, to have taken into account all the inconvenience which might result from the construction of the canal through his premises; that the defendants having used the land for the single purpose for which it appeared by the deed to have been purchased, they should not have more burthens imposed upon *them* than an individual would be subject to, who might have purchased it for the like or for any other improvement; and that they were not in law liable in damages for any inconvenience which the plaintiff might sustain, *necessarily* resulting from doing the act contemplated by the parties; that the right of the company to enter upon that land, and dig the canal, was founded upon the contract, and not upon the statute, and that

the facts pleaded by the defendants constituted a legal defence.

The other decision arose out of an action, instituted against the company by one Van Schoick, for the recovery of damages sustained from leakage, on account of the alleged unskilful construction of the canal over his premises, and from the hemming in of waters upon his lands by the embankments of the canal.

The company pleaded the general issue and a former recovery.

In support of the issue joined upon the latter plea, they gave in evidence before the jury proceedings had, at a Burlington Circuit Court, upon an issue directed by this court between those parties.

No contract had been effected by them, but the company had acquired their right to enter upon the premises and construct their works, and the plaintiff had acquired his right to recover compensation under the thirteenth section of the charter of the company.

Commissioners had been duly appointed ; a report had been made, which, upon application of the plaintiff, was set aside by this court, and an assessment of the value of the said land and of the damages sustained had been made by a jury.

In reaching the conclusion to which the court came in that case, the judge who delivered the opinion sought simply to declare what was the legal effect of an award of commissioners ; or, in case that should be set aside, the effect of a judgment rendered upon the verdict of a jury empannelled under the provisions of the charter.

Such proceedings were therein adjudged to be final and conclusive between the parties, both as to the value of the land and the damages accruing from any and every physical effect produced by the construction and use of the canal, provided it be constructed according to the provisions of the act and with proper care and skill.

There was no evidence of careless or unskilful construction of the canal, and that case was settled, and the plaintiff de-

feated, by the legal effect of the proceedings had under the charter.

However desirable it may be that the rights of companies established for the promotion of public improvements should be quieted, and that repeated suits against them for the recovery of damages incident to the erection and the use of their works should be discouraged, I am not prepared to say that either of the decisions cited furnish authority for the court to disturb the judgment which has been rendered in this case.

These parties stand upon their *contract,* and their rights and duties must be ascertained from it.

The company had the choice of two modes of acquiring titles and of settling for damages, the one by agreement with the owner of required lands, for the use or purchase thereof, and for compensation for the damages sustained, and to be sustained by him, the other by the agency of commissioners.

In this instance they did not resort to the latter mode, either for ascertaining the value of the lands of Joshua Wright or for assessing any damages which he had sustained, or might sustain, from the erection and use of the canal; but they progressed with their work through his farm, constructed the culvert over Watson's creek, upon the land of another party, at a point some distance beyond Wright's western line, and, in February, 1834, made a contract with him, which is expressed in the deed before adverted to.

Aaron Lee, the plaintiff below, having purchased from Wright, after his conveyance to the company, can be in no better position than Mr. Wright would have been had he retained the farm until the time of the commencement of this suit below, nor is he in a worse condition than Wright would have been.

We thus are brought to determine the intent of the parties to *that deed,* as indicated by the language employed.

Can the instrument, upon the most liberal construction, be applied to extend to lands other than those therein described, and to other damages than those incident to the construction and use of the canal through those specific lands?

If, however, we adopt the defence of the company, we

must construe the deed as reaching to damages sustained in a different part of the farm, and springing from the erection and use of a portion of the canal which is built over another person's premises.

Had the company intended that their contract with Mr. Wright should be as extensive in its operation and effect as an adversary assessment under the provisions of the charter, they would have used *some* expression in the deed that could give color to such intent.

No person, on reading the deed, could suppose that the lands of the grantor were likely to be affected by the canal at any other place than where they were intersected; and nothing in the situation of the parties, or in the character of the suit, should lead the court to a forced construction of the instrument.

I therefore conclude that the deed from Joshua Wright to the company constituted *no legal defence* to a claim of compensation for the damages set out in the plaintiff's declaration, and that the judge did not err in his instructions to the jury.

It was objected, by the opening counsel for the company, that they were not trespassers; that they had constructed their works under an authority derived from the state of New Jersey, and hence, in so doing, that they could not be guilty of creating a nuisance.

The unsoundness of that position was so manifest, that the court declined hearing a reply upon it from the other side.

The decision pronounced by this court upon the issue of the statute of limitations, in the action of Robert Wright against the company, bearing against that branch of the defence set up in this suit, I am of opinion, upon the whole case, that the judgment of the Circuit Court should be affirmed, with costs.

Judgment affirmed.

CITED *in Stephens & Condit Trans. Co. v. Cent. R. R. Co.*, 4 *Vr.* 237; *Trenton Water Power* v. *Raff*, 7 *Vr.* 342; *Trenton Water Power* v. *Chambers*, 2 *Beas.* 200.