[Civ. No. 23082.   First Dist., Div. Three.   May 4, 1967.]

TOM DUFFY et al., Plaintiffs and Respondents, v. RALPH F. CAMPBELL et al., Defendants and Appellants.

Robson, Malott & Pedder and Arthur Lyle Robson for Defendants and Appellants.

Harold R. Farrow for Plaintiffs and Respondents.

SALSMAN, J.—Defendants Ralph F. and Emily J. Campbell (sellers) and Tom Snook (buyer) appeal from a judgment in favor of plaintiffs Tom Duffy and K/R Sales, Inc., (brokers) for damages resulting from defendants' breach of a contract to pay a real estate transaction commission.

Appellants Campbell (the sellers) owned property at 2308 Bates Avenue, Concord. They listed their property for sale with respondent Tom Duffy, a licensed real estate broker. The listing agreement was dated February 16, 1961 and was to expire May 16, 1961. The agreement stated an asking price of $39,500 cash, provided for multiple listing of the sellers' property with other brokers and stipulated that the sellers would pay a 6 percent broker's commission.

On February 17, 1961, the Campbells executed an "Authorization to Sell" in behalf of Duffy. This authorization also contained the sellers' promise to pay a 6 percent broker's commission.

Toby Van Pelt, a real estate salesman employed by K/R

Sales, Inc., interested appellant Snook in the Campbell property. Snook decided to make an offer. He signed a "Deposit Receipt" for Van Pelt, dated March 28, 1961. He offered to buy the subject property for the listed price of $39,500. He agreed to pay $31,000 cash subject to refinancing the property with a $21,000 loan. He proposed that the balance of the purchase price be carried by the Campbells on a 5-year note, secured by a second deed of trust. Snook's offer was further subject to ". . . sale of Buyer's Home at 166 Pulido Danville, California within 90 days from this date." The deposit receipt also provided for payment of a broker's commission of 6 percent of the selling price.

Snook's offer was accepted in writing by the Campbells on the day the offer was made. The parties opened an escrow with Western Title Guaranty Company.

Sale of the Snook property proved difficult. On June 28, 1961, by mutual agreement, terms of the deposit receipt were extended to August 28, 1961. The Campbells wanted all cash for their property because they planned to purchase property in Nevada and needed cash for this purpose. However, before the termination date to which the deposit receipt had been extended arrived, the Campbells found they could use "paper" instead of cash in their Nevada deal, and so informed Snook. Both Snook and the Campbells were anxious to complete the sale, and accordingly, some time before August 28th, met at the office of Snook's attorney. There they worked out an arrangement by which their sale could be completed, despite the fact that Snook's home was still unsold. They agreed in writing that the price of the Campbell property would be reduced by the amount of the broker's commission; Snook was to obtain a loan of $21,000, and was to give his note for $10,000, secured by a second deed of trust, payable in full in seven years. Finally, Snook agreed to give his personal, unsecured note for the balance of the purchase price. Snook further agreed to hold the Campbells harmless in the event a broker's commission was found due on the sale.

Snook and the Campbells opened a new escrow for completion of their transaction. They used a title company different from the one previously named, because they thought it best to complete the deal with a title company ignorant of their agreements with the respondent brokers. Of course, they did not disclose these arrangements to respondents. Although their agreement to complete their sale was executed before

August 28th, the expiration date named in the deposit receipt, it was post-dated to August 30th.

Van Pelt, acting in the dark, continued his efforts to complete the sale between the Campbells and Duffy but was unsuccessful. A memo in his file indicated his attention to the proposed sale as late as September 14th, and recorded that, in his view, the transaction was "still alive."

The Campbells and Snook completed their sale as agreed. The exact date of completion is not found, but it apparently occurred shortly after expiration of the last day upon which the brokers could claim their commission under the listing, authorization to sell, and the deposit receipt.

The trial court found that the agreement of sale between Snook and the Campbells, although dated August 30th, was in fact executed some time before August 28th. The court also found that the condition in the deposit receipt concerning sale of Snook's property had been waived by the parties, and that at the time of waiver Snook had actual knowledge of the Campbells' obligation to pay a real estate broker's commission to respondents on account of the sale.

Appellants advance two contentions with which we must treat before coming to the principal issue presented by their appeal. ■ First they say it was error on the part of the trial court to admit certain evidence over their objection after respondents had declined to answer interrogatories propounded to them.

This attack cannot succeed for several reasons. In the first place, there is no proper record upon which to base appellants' contention. Neither the interrogatories nor the answers thereto are made a part of the record on appeal. They appear only in appellants' brief. The same is true of appellants' motion to require further answers to interrogatories. That motion was apparently denied in the trial court, but we are not supplied with the transcript of those proceedings, nor with the declarations and memoranda used at the hearing on the motion. Thus, in the absence of a proper record from which to reach a decision, we need not devote our labors to the point raised. Nevertheless, looking at the interrogatories propounded and the answers given, as disclosed in appellants' brief, it is clear that reasonably adequate answers were in fact supplied to the questions asked, and that no prejudice appears or has been suffered because some interrogatories were not answered as fully as appellants might wish.

Appellants next argue that the court erred in denying their motion for summary judgment. The respondents moved for partial summary judgment as to appellant Snook. Appellants also moved for summary judgment. Each side filed various declarations and counter-declarations. All motions were denied. We see no error.

The purpose of summary judgment is to discover if there are any issues of fact requiring trial. (*Gardner* v. *Jonathan Club,* 35 Cal.2d 343, 347 [217 P.2d 961]; *Terrell* v. *Local Lodge 758 etc. Machinists,* 150 Cal.App.2d 24, 26 [309 P.2d 130].) Such issues were disclosed here. Respondents declared that appellants agreed to waive sale of the Snook property as a condition of Snook's offer to buy the Campbell property, and that Snook and the Campbells delayed completion of their sale past the August 28th deadline to defeat respondents' claim to a broker's commission. Snook's declaration denied these charges. Thus fact issues were clearly present, and the motions were properly denied. Moreover, appellants' motions were in effect motions to strike respondents' complaint on the ground that their action was without merit. The rule is well established that before a court can strike a plaintiff's complaint as mere sham, and dismiss the action pursuant to Code of Civil Procedure section 437c, it must clearly appear that the allegations of the complaint are false or that the action is without merit. The court, in considering such a motion, must resolve all reasonable doubts in favor of the pleading. (*Arnold* v. *Hibernia Sav. & Loan Soc.,* 23 Cal.2d 741, 744 [146 P.2d 684]; *Continental etc. Assn.* v. *Boggess,* 145 Cal. 30, 34 [78 P. 245]; *Eagle Oil & Refining Co.* v. *Prentice,* 19 Cal.2d 553, 556 [122 P.2d 264].) On its face respondents' complaint appears to be sufficient. Its allegations appear genuine. Nothing is shown from which it might be said that the complaint is a sham, or its allegations false. Finally we observe that we would reach a strange and curious result indeed if we were now to reverse a judgment for respondents taken on the merits and supported by an abundance of evidence, solely on the ground that appellants' motion for summary judgment should have been granted. Appellants ask too much.

Appellants discuss the merits of their appeal in two short sections of their brief. First they contend that the deposit receipt procured by respondents, and which Snook signed, was subject to a condition precedent, namely, the sale of Snook's property. Therefore, they argue, respondents did

not produce a buyer ready, able and willing to buy the Campbells' property upon the terms under which it was listed by the sellers. Since the offer was conditional, appellants conclude that respondents have not earned their commission. We do not agree.

Appellants' reliance on *Ridgway* v. *Chase,* 122 Cal.App.2d 840 [265 P.2d 603] is not helpful to them. In *Ridgway,* the broker agreed to procure a lease of the owner's property on certain terms and conditions. He did not perform, and the owner never entered into any lease with the broker's prospect. The court properly held that no commission was due. Here, however, respondents did produce a willing buyer for the Campbells' property. It is true that when respondents produced Snook as a buyer he made a conditional offer. But the parties later took negotiations into their own hands and bypassed their brokers, with the ultimate result that the condition named in Snook's offer was waived by both buyer and seller. When this was done, Snook became a buyer, ready, willing and able to buy. (See *Wesley N. Taylor Co.* v. *Russell,* 194 Cal.App.2d 816, 828 [15 Cal.Rptr. 357].) He was produced through the efforts of respondents, and under the terms of the deposit receipt, they are entitled to their commission.

In *Wilson* v. *Roppolo,* 207 Cal.App.2d 276 [24 Cal.Rptr. 437] the court said: " 'A broker is entitled to his commission for effecting a sale of real or personal property only when it affirmatively appears that the purchaser, as the result of the broker's efforts, was induced to buy the property, or that a prospective purchaser was ready, able and willing to buy upon the terms and at the price specified by the owner.' (*Cone* v. *Keil* (1912) 18 Cal.App. 675, 679 [124 P. 548]; see *Gunn* v. *Bank of Cal.* (1893) 99 Cal. 349, 353 [33 P. 1105]." The court further declared that: "The fact that . . . owner changed the terms from those in the listing agreement does not make the broker any the less the procuring agent for the sale nor give the owner an excuse for not paying the broker who brought him and the purchaser together." Here respondents brought the parties together. The Campbells' altered terms of sale were met by Snook. The sale was completed. Under these circumstances, respondents are entitled to their commission. (See *The Right of a Real Estate Broker to a Commission in California,* 8 U.C.L.A. L.Rev., 152, 161-162.)

Finally, the elements of good faith and fair dealing must be taken into account. It is clear from the evidence that appel-

lants agreed to the waiver of sale of Snook's property as a condition precedent to completion of the sale of the Campbells' property, and that they reached this agreement secretly and for the purpose of defeating respondents' claims to a commission. They agreed to complete their sale before the expiration date to which the terms of the deposit receipt had been extended. But they conspired to make it appear that they reached their agreement only after the terminal date of the written agreements under which they were liable to respondents for a commsssion. In furtherance of their scheme they abandoned their first escrow, and created a new one with a different title company, principally to conceal the presence of brokers in the transaction. They reduced the sale price by the exact amount of the commission the Campbells had agreed to pay. The Campbells' conscience suggested to them that under the circumstances they owed a commission for the services of respondents. They were prudent enough to extract from Snook an agreement in writing to pay the commission if a commission was ultimately found due the brokers. Upon these facts it would be inequitable and unjust to sustain appellants' claim that respondents did not produce a buyer ready, able and willing to buy, or that they were not the procuring cause of the sale. Thus appellants Campbell are liable to respondents because they produced the buyer with whom the Campbells later secretly completed the sale (see *Rose* v. *Hunter*, 155 Cal.App.2d 319 [317 P.2d 1027]; *Martin* v. *Chernabaeff*, 149 Cal.App.2d 593 [308 P.2d 470]) and appellant Snook is liable on the written agreement with the Campbells whereby he agreed to pay any commission due on the sale.

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.