[Civ. No. 11949. Third Dist. Jan. 7, 1970.]

GEORGE B. COX et al., Plaintiffs and Appellants, v.
STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Reginald M. Watt for Plaintiffs and Appellants.

Thomas C. Lynch, Attorney General, and Lloyd Hinkelman, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**JANES, J.**—Plaintiff landowners appeal from a summary judgment granted defendant State of California in an inverse condemnation action.

### The Pleadings

The charging allegations of plaintiffs' complaint are broadly drafted. They allege that, for a period prior to December 22, 1964, defendant "participated in the planning, designing, construction, maintenance, and operation of a flood control project on the Feather River in Butte County," and that on or about that date, as a proximate result of defendant's said activities, "waters from the Feather River were diverted from natural drainage by the flood control project" onto certain described real property of plaintiffs (hereinafter called "Lot I"), to its damage. The complaint does not identify or otherwise locate the "flood control project."

Defendant's answer generally denies these charging allegations and sets forth numerous affirmative defenses, among which are averments that plaintiffs "voluntarily assumed the risk of such flooding," that a right to flood plaintiffs' land "has long since been gained," that Lot I "has been dedicated by plaintiffs or their predecessor in interest for public purposes, namely, a floodway and appurtenant uses," and that, by an indenture dated February 20, 1946, "plaintiffs or their predecessor in interest . . . granted to the defendant certain rights of way and easements, necessary for the construction, operation and maintenance of the . . . Sacramento River Flood Control Project," with the alleged result that "plaintiffs are . . . estopped from prosecuting this action for any damages that may have occurred as a natural, reasonable incident of the Project."

*The Motion for Summary Judgment*

a. *Supporting Documents*

Defendant based its motion for summary judgment (Code Civ. Proc., § 437c) upon a certified copy of the aforesaid 1946 indenture, signed by plaintiffs' predecessors in title as grantors, as well as upon certified copies of a stipulated judgment and final order of condemnation which were entered in 1957 in the same superior court in a condemnation action brought against the present plaintiffs by the Sacramento and San Joaquin Drainage District, acting by and through the state Reclamation Board. Defendant's motion was also based upon a registered civil engineer's written declaration under penalty of perjury and upon a United States Geological Survey map. On the survey map, the civil engineer had drawn the outline of Lot I (the subject of plaintiffs' inverse condemnation complaint for 1964 flood damages), and he had also delineated the location of the right-of-way and easement granted by the 1946 indenture and the boundaries of the property involved in the 1957 stipulated condemnation. Defendant filed no other declarations.

The following sketch (not drawn to scale) adapted from the engineer's diagram depicts the lands in question and will aid in understanding the positions of the parties:

PARCEL No. 1
(1957 Judgment
in Condemnation)

EASEMENT
(1946 Indenture)
(crosshatching)

LOT I
(Subject of
Present Action)

Defendant's above-mentioned supporting documents generally show the following: Lot I is approximately a right-angled triangle situated immediately west of the Feather River. The river flows from northwest to southeast at this location. One leg of the triangle runs westerly inland from the river to the point of the right angle. From this point, the second leg of the triangle runs northerly back to the river. The hypotenuse parallels the west side of the river and connects the two legs. By the 1946 indenture, plaintiffs' predecessors granted to the Sacramento and San Joaquin Drainage District, its successors and assignees, "a perpetual right of way and easement to build, construct, reconstruct, repair and forever maintain the west levee of the Feather River, a part of the Sacramento River Flood Control Plan of the California Debris Commission, including all embankments, ditches and appurtenant structures, incidental works to said levee and bank protection works adjacent thereto. . . ." The right-of-way and easement thus granted is a narrow strip (shown hatched on the diagram) which commences inland at the point of the right angle of Lot I. The strip thence runs northerly to the river, coinciding over this distance with all of the north-south leg (the west boundary) of Lot I. According to the engineer's uncontradicted declaration, the right-of-way and easement "is the location of the levee on the west side of the Feather River along this reach of the river." Thus, *all of Lot I lies between the west levee and the river.*

From the point on the river bank which comprises the northern terminus of Lot I, the 1946 right-of-way and easement (i.e., the west levee of the Feather River) continues northwesterly along the river until it meets, and coincides with, the western boundary of the property which was the subject of the 1957 judgment and final order of condemnation. As noted above, that judgment and final order were stipulated to by the present plaintiffs.[1] The 1957 judgment and order condemned to the Sacramento and San Joaquin Drainage District, its successors and assignees, for "a public use authorized by law as a part of the flood control project required by the plans of the California Debris Commission . . . ," a small parcel in the shape of a tipped over isosceles triangle. The base of that triangle runs northwesterly and coincides with the northerly segment of the 1946 right-of-way and easement (i.e., the base is part of the west levee). The area bounded by the isosceles triangle (herein called "Parcel No. 1") lies between

[1]The 1957 judgment and final order simply refer to the stipulation; they do not recite that the stipulation is co-extensive with their content. However, these references adequately placed the stipulation in the 1957 case before the same court for consideration on defendant's motion for summary judgment. (See, *Thomson* v. *Honer* (1960) 179 Cal.App.2d 197, 203 [3 Cal.Rptr. 791]; Evid. Code, § 452, subd. (d), and § 453.) On our own motion, we have called for and examined the stipulation. (Evid. Code, § 459.) It consented to all aspects of the judgment and final order in the 1957 condemnation proceeding.

the west levee and the Feather River to the east, toward which the apex of that triangle points and against which river that apex abuts.

### b. *Waiver Clauses*

By the terms of the 1946 indenture, for which the grantee paid $1,400, plaintiffs' predecessors expressly waived "all claim or claims for any and all compensation for and on account of the location, establishment and construction of said levee, embankments and appurtenant structures upon the right of way" which was thereby granted. By the terms of the 1957 stipulation, judgment, and final order in condemnation, for which plaintiffs received $615, they expressly waived further payment for "all damages of every kind and nature suffered by [them] . . . by reason of the taking of [the isosceles-shaped Parcel No. 1] . . . and the construction of said levee on said property for the said public use. . . ."

### *Contentions of the Parties*

The sole ground for summary judgment advanced by defendant in the trial court was that, because of the 1946 indenture and the 1957 judgment in condemnation, and the waiver clauses thereof, "plaintiffs are estopped to claim any damages in inverse condemnation reasonably to be anticipated by the construction of the levee on the west side of the Feather River." On this appeal, defendant adheres to that ground in support of the judgment.

In opposition to the motion, plaintiffs filed the declaration of their attorney. That declaration submitted to the trial court certain photocopies furnished to plaintiffs' counsel by the Attorney General. The photocopies are of documents apparently related to the 1946 indenture, including project and disbursement records which purport to show the area and extent of interest acquired and the amount of money paid for the right-of-way and its appurtenances. Some of those underlying documents appear themselves to have been purported copies or unsigned. (See, Evid. Code, § 1401, subd. (b).) ■ Premised upon the photocopies, plaintiffs' opening and closing briefs are replete with conclusionary arguments that there was "a lack of consideration" for the 1946 and 1957 waivers, and that they were "unconscionable . . . contracts of adhesion" arrived at through "a disparity of bargaining power." Quite apart from questions concerning authentication of the photocopied documents relied on, those papers do not support plaintiffs' arguments. It is hardly necessary to point out that statements of plaintiffs' attorney in his briefs are not part of the record on appeal. (*Gantner* v. *Gantner* (1952) 39 Cal.2d 272, 278 [246 P.2d 923]; *Truslow* v. *Woodruff* (1967) 252 Cal.App.2d 158, 163-164 [60 Cal. Rptr. 304]; *Williams* v. *Reed* (1919) 43 Cal.App. 425, 430 [185 P. 515].)

Plaintiffs' more persuasive argument is that factual issues were present

which could not be decided against them on the present record. In substance, defendant claims a "flowage easement" over Lot I by virtue of the 1946 indenture and the 1957 judgment in condemnation. It could reasonably have been anticipated—defendant urged to the trial court—that the construction of a levee on the right-of-way would result in flooding the lands between the levee and the river, and that such flooding might cause damage to lands located in such an area. Conversely, plaintiffs contend that the indenture and judgment are silent as to the creation of a flowage easement and that so broad a right cannot be acquired by implication.

In the context of this case, however, concentration on the existence *vel non* of a flowage easement misses the mark. Because the possible sources of future flood damage are infinite, as is the range of foreseeability of such damage, not all flowage easements carry the same legal consequences. Indeed, defendant's theory that a flowage easement was created seeks a meaningless label, one that fails to identify the issues determinative of its motion.

### The Applicable Law

■ As to future damage to the remainder, the effect of a taking by consent or conveyance for public use, or of a release of damages resulting therefrom, is the same as though the acquisition were by condemnation. (*Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 265-266 [42 Cal.Rptr. 89, 398 P.2d 129]; *Collopy* v. *United Railroads* (1924) 67 Cal. App. 716, 722 [228 P. 59]; *Sternes* v. *Sutter-Butte Canal Co.* (1923) 61 Cal.App. 737, 741-743 [216 P. 66]; 2 Lewis, Eminent Domain (3d ed. 1909), § 474, pp. 845-846, and § 822, pp. 1451-1452.) ■ Insofar as the *source* of such damage is concerned, "The long established rule is that an owner whose land is being condemned in part may not recover damages *in a condemnation action* to the remainder of his land caused by the manner in which the works are to be constructed or operated *on the land of others.* The owner may recover compensation only for the detriment that will result from the public improvement or operation of works *upon his land alone. . . .*" (*People* ex rel. *Dept. Public Works* v. *Elsmore* (1964) 229 Cal.App.2d 809, 811 [40 Cal.Rptr. 613] (italics ours); see also, *City of Berkeley* v. *Von Adelung* (1963) 214 Cal.App.2d 791 [29 Cal.Rptr. 802]; *People* v. *Emerson* (1936) 13 Cal.App.2d 673 [57 P.2d 955]; *Sanitation Dist. No. 2* v. *Averill* (1935) 8 Cal.App.2d 556, 560-561 [47 P.2d 786]; 4 Nichols, Eminent Domain (3d ed. 1962), § 14.21 [1], p. 514.) ■ Similarly, a conveyance for purposes of a public project, or a release of damages resulting from acquisition of the owner's land therefor, does not effect a waiver of damages caused by the construction or operation of the same project on the land of other owners. (See, *Longworth* v. *Meriden & Waterbury R.R. Co.* (1892) 61 Conn. 451 [23

A. 827]; *Eaton* v. *Boston C. & M. R.R.* (1872) 51 N.H. 504, 507 [12 Am.Rep. 147]; *Perrine* v. *Pennsylvania R.R. Co.* (1905) 72 N.J.L. 398 [61 A. 87]; *Delaware & Raritan Canal Co.* v. *Lee* (1849) 22 N.J.L. 243, 250; 2 Lewis, *ubi, cit. supra.*) ■ After his remaining property is damaged by such extrinsic causes, the owner may recover compensation for that damage in an inverse condemnation action (see, *People* v. *Emerson, supra,* at p. 674; *Sanitation Dist. No. 2* v. *Averill, supra,* at pp. 561-564), at least where the remainder suffers *actual physical injury,* whether foreseeable or not, which neither a private citizen nor government in the exercise of its police power would have a right to inflict (*Albers v. County of Los Angeles, supra,* 62 Cal.2d at pp. 256, 262-264; cf., *Sutfin* v. *State of California* (1968) 261 Cal.App.2d 50 [67 Cal.Rptr. 665]).

■ In contrast, where the remainder is damaged by public works construction or operation *not* on the land of others but on land deeded for such use by the owner of the remainder or taken from him by condemnation, the test becomes one of *foreseeability.* In that event, the doctrines of estoppel by deed or estoppel by judgment will preclude the owner from recovering by inverse condemnation such of those later damages to the remainder as could reasonably be expected to result from the necessary and ordinary use of the public project on the land granted or condemned. (*Albers* v. *County of Los Angeles, supra,* at pp. 265-266; *Williams* v. *Sutter-Butte Canal Co.* (1947) 82 Cal.App.2d 100, 102-103 [185 P.2d 664].)

■ "A defendant who moves for a summary judgment must prevail on the basis of his own affidavits and admissions made by the plaintiff, and unless the defendant's showing is sufficient, there is no burden on the plaintiff to file affidavits showing he has a cause of action or to even file counteraffidavits at all." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 111 [70 Cal.Rptr. 97, 443 P.2d 561].) ■ The defendant's supporting affidavits are responsive in nature and must necessarily be addressed to the issues raised by the complaint. (*Joslin* v. *Marin Municipal Water Dist.* (1967) 67 Cal.2d 132, 148-149 [60 Cal.Rptr. 377, 429 P.2d 889]; *Swaffield* v. *Universal Ecsco Corp.* (1969) 271 Cal.App.2d 147, 171-172 [76 Cal.Rptr. 680]; *Miller & Lux, Inc.* v. *Bank of America* (1963) 212 Cal.App.2d 719, 728 [28 Cal.Rptr. 401]; *Craig* v. *Earl* (1961) 194 Cal.App.2d 652, 655 [15 Cal.Rptr. 207].)

■ In determining whether triable issues are presented, the court may not consider the allegations of the complaint *except to the extent they are not controverted by affidavits on either side.* (*Jack* v. *Wood* (1968) 258 Cal.App.2d 639, 647 [65 Cal.Rptr. 856]; *Elliott* v. *Occidental Life Ins. Co.*

(1964) 225 Cal.App.2d 510, 514-515 [37 Cal.Rptr. 525]; *Pappas* v. *Union Bond & Trust Co.* (1960) 186 Cal.App.2d 699, 701 [9 Cal.Rptr. 218]; see, *Arnold* v. *Hibernia Sav. & Loan Soc.* (1944) 23 Cal.2d 741, 744 [146 P.2d 684].) ■ Before a defendant's motion can be granted, it must clearly appear that the action is without merit, and every reasonable doubt must be resolved in favor of the complaint. (*Arnold* v. *Hibernia Sav. & Loan Soc., supra*; *Duffy* v. *Campbell* (1967) 250 Cal.App.2d 662, 666 [58 Cal.Rptr. 653]; *Southern Pac. Co.* v. *Fish* (1958) 166 Cal.App.2d 353, 364 [333 P.2d 133].) ■ "Thus a plaintiff who has pleaded a cause of action on either of two theories will not be subject to defeat by summary judgment because the defendant has established by an uncontradicted affidavit that *one* of the two theories (but not necessarily the other) cannot be established. The burden is upon defendant to rule out *all possible merit.* . . ." (*Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 50 [46 Cal.Rptr. 552] (original italics); see also, *Swaffield* v. *Universal Ecsco Corp., supra,* 271 Cal.App.2d at p. 171.)

■ Tested by the foregoing substantive and procedural rules, the summary judgment granted defendant left major issues of fact unresolved. Based on the record before us, there was nothing before the trial court to show that plaintiffs' complaint was talking about the *same* "flood control project" as the one for which the right-of-way and easement were granted along the west boundary of Lot I in 1946, or for which Parcel No. 1 was condemned in 1957.[2] The written waiver in the 1946 indenture was limited to claims on account of the establishment and construction of the west levee *upon the right-of-way* which was thereby granted. Similarly, the 1957 stipulated judgment and order contained a waiver only of damage caused by the taking of Parcel No. 1 and by the construction of the west levee *on that parcel.* The language of the 1946 and 1957 waivers was imprecise as to whether only *past* damages were intended to be waived—particularly in the case of the 1957 waiver, which in terms embraced only damages "suffered." The complaint was broad enough to encompass damages to Lot I caused by the "planning, designing, construction, maintenance, and operation" of the unidentified "flood control project" *on the land of others,* but the summary judgment was granted without any showing that such was or was not the evidentiary theory upon which plaintiffs based their pleading.[3] Likewise, the complaint did not restrict itself to damages to

---

[2]Plaintiffs' opening brief tells us that "[t]his is a suit for flood damage caused by the Sacramento River Flood Control Project. . . ."

[3]On appeal, plaintiffs' closing brief describes "this case" as being one where "the damage to Plaintiffs' lands is caused not by the tiny portion of the levee on his land, but by the miles of levee upstream which channels the water onto his lands." This allegation was not presented by affidavit to the trial court and has no support in the record.

Lot I *which could reasonably be expected to result from the necessary and ordinary use* of the "flood control project" on the land granted in 1946 or condemned in 1957, even if such was plaintiffs' evidentiary theory as to the *source* of damage.

Defendant answered without specially demurring. Insofar as the record shows, defendant moved for summary judgment without having first resorted to discovery. The motion was premature. The court was required to resolve every reasonable doubt in favor of the complaint. The broadly drafted complaint was capable of several different constructions, as to some of which the supporting papers of defendant did not address themselves and against which the indenture and condemnation judgment could provide no estoppel.

The judgment is reversed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied February 4, 1970, and the opinion was modified to read as printed above.