[Civ. No. 18130. Third Dist. Oct. 10, 1979.]

PACIFIC ARCHITECTS COLLABORATIVE,
Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants
and Respondents.

114

COUNSEL

William J. Turpit and Irvine P. Dungan for Plaintiff and Appellant.

George Deukmejian, Attorney General, L. Stephen Porter, Assistant Attorney General, and Geoffrey L. Graybill, Deputy Attorney General, for Defendants and Respondents.

OPINION

WARREN, J.*—Plaintiff, Pacific Architects Collaborative (Pacific), appeals a granting of judgment on the pleadings and entry of summary judgment in favor of defendants on plaintiff's first amended complaint wherein plaintiff sought to recover expenses incurred in preparing mobile trailers pursuant to a bid solicitation sent by the California Employment Development Department on behalf of the Office of Migrant Services. Plaintiff also sought to recover $16 million in lost profits.

### STATEMENT OF FACTS

On June 1, 1977, the California Employment Development Department, at the request of the Office of Migrant Services, mailed out a document entitled "Invitation for Bid and Bid," seeking the solicitation of bids to construct 50 mobile housing units for use by migrant farm workers. The bid invitation stated that bids were to be received by 2 p.m. on June 15, 1977. The document contained the notation at the top of the first page "THIS IS NOT AN ORDER," and further provided that:

(1) "A prototype or sample of the proposed brands and model numbers may be required for inspection and evaluation prior to the bid award."

(2) "The State reserves the right to determine the award of this bid on the basis of [various options stated in the bid] and to award by line item, as deemed in the best interest of the State."[1]

---

*Assigned by the Chairperson of the Judicial Council.

[1]This provision is also embodied in Government Code section 14335, which states: "If the director deems the acceptance of the lowest responsible bid or bids is not for the best interests of the State, he may reject all bids and proceed by day's labor or advertise for other bids in the manner required by this chapter."

In addition, a general provision form was also sent with the bid, which provided in pertinent part:

"9. Award of contracts: (a) Contracts and purchases will be made or entered into with the lowest responsible bidder meeting specifications, except as otherwise specified in the Invitation. Where more than one item is specified in the Invitation, *the State reserves the right to determine the low bidder either on the basis of individual items or on the basis of all items included in its Invitation for Bids, unless otherwise expressly provided in the State's Invitation for Bids.* [¶] (b) Unless the bidder specifies otherwise in his bid, the State may accept any item or group of items of any bid. The State reserves the right to *modify* or cancel *in whole or in part* its Invitation for Bids. [¶] (c) The State reserves the right to reject any or all bids and to waive informalities and minor irregularities in bids received." (Original italics.)

On May 6, 1977, the Office of Migrant Services mailed a purchase estimate to the Office of Procurement, Department of General Services, estimating the cost of the mobile units at $315,270. Inferably, this estimate was not disclosed to the bidders.

Pacific mailed its bid on June 1, 1977. Although four other manufacturers also bid to construct the mobile housing units, when the bids were opened on June 15, 1977, Pacific's bid of $398,650 was the lowest bid.

Several days after the bid opening, Pacific was contacted by state employees and asked to have a prototype ready for inspection, and subsequently gave an inspection tour of its plant to state employees. So as to have a prototype available, Pacific ordered materials and started production on some of the units. It also appears Pacific relied on a joint powers appropriation agreement between the Employment Development Department and the Housing Authority of Sutter County allocating $453,600 for the project.

Subsequently, Pacific was informed by letter dated June 24, 1977, that on June 22, 1977, the state had rejected all the bids on the ground that insufficient funds existed. In fact, however, the reason the bids were rejected was because of the purchase estimate sent to the Office of Procurement by the Office of Migrant Services, which stated that the price estimate for 50 units was $315,270. Pacific's bid was approxi-

mately $83,000 in excess of this estimate exclusive of sales tax and temporary installation costs.

On October 18, 1977, Pacific's claim for its expenses was rejected by the State Board of Control. After this rejection, Pacific filed its complaint, and subsequently filed its first amended complaint.

The first amended complaint alleged four causes of action based, respectively, on promissory estoppel, negligent rejection without making a reasonable effort to ascertain if funds were available, intentional misrepresentation of the nonexistence of available funds, and declaratory relief to require the state to award the contract to Pacific. Damages were stated to be $50,000 for loss of expenses and $16 million for loss of anticipated profits. Exactly how the figure of $16 million was computed is unclear from the record herein.

After filing their answer denying the allegations of the complaint, defendants moved for judgment on the pleadings and summary judgment. The basis of the motion was that the state had the right to reject all bids, that it had not abused its discretion in rejecting the bids, and that a rejected bidder has no cause of action against the state for damages occasioned when all bids are rejected. Defendants then moved for and were granted a protective order postponing the depositions of Messrs. Livingston, Mattesich, Babich, and Velez, state employees who considered the bids, until after the summary judgment motion hearing.

The trial court granted defendants' motion for judgment on the pleadings and summary judgment. The trial court reasoned that the complaint failed to state a cause of action, that there were no triable issues of fact, and that it was conclusively established that Pacific could not amend its complaint to allege facts sufficient to state a cause of action.

Plaintiff contends on appeal: (1) the state is liable for Pacific's damages occasioned by Pacific when it attempted to supply a prototype product based on a promissory estoppel theory because when the state asked Pacific to supply a prototype, it impliedly promised and Pacific reasonably relied to its detriment that the contract would be awarded to the lowest bidder; (2) the statement that all bids were rejected was an actionable intentional misrepresentation because the statement was

false;[2] and (3) the trial court abused its discretion when, prior to the summary judgment hearing, it refused to allow Pacific to depose certain state employees so as to ascertain what their mental state was when they issued the statement that the contract was rejected for lack of funds.

## I

Preliminarily, we note the relevant law applicable to review of judgment on the pleadings and summary judgment.

### A

"[O]n this review of the judgment on the pleadings, the question before us is whether, disregarding imperfections of form which could be cured by amendment, the facts pleaded and judicially noticed entitle [plaintiff] to any relief, including setting aside the prior judgments. (*MacIsaac* v. *Pozzo* [1945] 26 Cal.2d [809] at pp. 813, 815 [161 P.2d 449]; see also, 4 Witkin, Cal. Procedure (2d ed. 1971) at pp. 2817-2822.)" (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 632 [99 Cal.Rptr. 393].)

"A motion for judgment on the pleadings is treated identically to a demurrer. (*Welshans* v. *City of Santa Barbara* (1962) 205 Cal.App.2d 304, 305 [23 Cal.Rptr. 108].) Consequently, the facts alleged in the complaint must be assumed to be true and liberally construed in favor of the party against whom the motion is made. (*Gill* v. *Curtis Publishing Co.* (1952) 38 Cal.2d 273, 275 [239 P.2d 630]; *Semole* v. *Sansoucie* (1972) 28 Cal.App.3d 714, 719 [104 Cal.Rptr. 897].)" (*Gabaldon* v. *United Farm Workers Organizing Committee* (1973) 35 Cal.App.3d 757, 759 [111 Cal.Rptr. 203]; see, *Board of Regents* v. *Davis* (1975) 14 Cal.3d 33, 37, fn. 4 [120 Cal.Rptr. 407, 533 P.2d 1047]; *Elliott* v. *City of Pacific Grove* (1975) 54 Cal.App.3d 53, 56 [126 Cal.Rptr. 371].)

### B

"The procedure for the entry of a summary judgment provides a method by which, if the pleadings are not defective, the court may determine whether the triable issues apparently raised by them are real or

---

2See discussion in text accompanying footnote 4, *infra*.

merely the product of adept pleading." (*Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 262 [223 P.2d 244].)

The trial court must grant the motion for summary judgment if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c.)

"The purpose of the summary judgment statute (Code Civ. Proc., § 437c) is to promote and protect the administration of justice, and to expedite litigation by the elimination of needless trials. [Citations.] The court on a motion for summary judgment does not try issues, but merely determines on the basis of the affidavits of the parties whether there are factual issues to be tried. [Citations.]" (*Exchequer Acceptance Corp.* v. *Alexander* (1969) 271 Cal.App.2d 1, 11 [76 Cal.Rptr. 328]; *Jack* v. *Wood* (1968) 258 Cal.App.2d 639, 646 [65 Cal.Rptr. 856].)

■ "In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. [Citations.]" (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; see, *Pettis* v. *General Tel. Co.* (1967) 66 Cal.2d 503, 505 [58 Cal.Rptr. 316, 426 P.2d 884].)

■ "The motion shall be supported or opposed by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken.

" . . . . . . . . . . . . . . .

"Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (Code Civ. Proc., § 437c.)

""[T]o satisfy the statutory requirement...the movant's affidavits must state all the requisite evidentiary facts and not merely the ulti-

mate facts. (*Southern Pacific Co.* v. *Fish* (1958) 166 Cal.App.2d 353, 362 [333 P.2d 133]; *Murphy* v. *Kelly* (1955) 137 Cal.App.2d 21, 30-31 [289 P.2d 565].) Moreover, neither conclusions of law nor conclusions of fact are sufficient to satisfy the statutory requirement. (*Gardenswartz* v. *Equitable etc. Soc.* (1937) 23 Cal.App.2d Supp. 745, 754 [68 P.2d 322].)'" [*Snider* v. *Snider* (1962)] 200 Cal.App.2d at pp. 748-749 [19 Cal.Rptr. 709].)" (*de Echeguren* v. *de Echeguren* (1962) 210 Cal. App.2d 141, 147 [26 Cal.Rptr. 562]; see, *Warfield* v. *McGraw-Hill, Inc.* (1973) 32 Cal.App.3d 1041, 1046 [108 Cal.Rptr. 652]; *Hatch* v. *Bush* (1963) 215 Cal.App.2d 692, 702 [30 Cal.Rptr. 397, 13 A.L.R.3d 503].)

■ "The defendant's supporting affidavits are responsive in nature and must necessarily be addressed to the issues raised by the complaint. (*Joslin* v. *Marin Municipal Water Dist.* (1967) 67 Cal.2d 132, 148-149 [60 Cal.Rptr. 377, 429 P.2d 889]; *Swaffield* v. *Universal Ecsco Corp.* (1969) 271 Cal.App.2d 147, 171-172 [76 Cal.Rptr. 680]; *Miller & Lux, Inc.* v. *Bank of America* (1963) 212 Cal.App.2d 719, 728 [28 Cal.Rptr. 401]; *Craig* v. *Earl* (1961) 194 Cal.App.2d 652, 655 [15 Cal.Rptr. 207].)

■ "In determining whether triable issues are presented, the court may not consider the allegations of the complaint *except to the extent they are not controverted by affidavits on either side.* (*Jack* v. *Wood* (1968) 258 Cal.App.2d 639, 647 [65 Cal.Rptr. 856]; *Elliott* v. *Occidental Life Ins. Co.* (1964) 225 Cal.App.2d 510, 514-515 [37 Cal.Rptr. 525]; *Pappas* v. *Union Bond & Trust Co.* (1960) 186 Cal.App.2d 699, 701 [9 Cal.Rptr. 218]; see, *Arnold* v. *Hibernia Sav. & Loan Soc.* (1944) 23 Cal.2d 741, 744 [146 P.2d 684].) ■ 'Before a defendant's motion can be granted, it must clearly appear that the action is without merit, and every reasonable doubt must be resolved in favor of the complaint. (*Arnold* v. *Hibernia Sav. & Loan Soc., supra; Duffy* v. *Campbell* (1967) 250 Cal.App.2d 662, 666 [58 Cal.Rptr. 653]; *Southern Pac. Co.* v. *Fish* (1958) 166 Cal.App.2d 353, 362 [333 P.2d 133].) 'Thus a plaintiff who has pleaded a cause of action on either of two theories will not be subject to defeat by summary judgment because the defendant has established by an uncontradicted affidavit that *one* of the two theories (but not necessarily the other) cannot be established. The burden is upon the defendant to rule out *all possible merit . . . .*' (*Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 50 [46 Cal.Rptr. 552.] (original italics); see also, *Swaffield* v. *Universal Ecsco*

*Corp., supra*, 271 Cal.App.2d at p. 171.)" (*Cox v. State of California* (1970) 3 Cal.App.3d 301, 309-310 [82 Cal.Rptr. 896] original italics.)

■ The trial court's decision must be determined on the basis of the papers filed at the time the court considered the motion, not in the light of documents filed subsequent to the trial court's resolution of the issue. (*Jacobs v. Retail Clerks Union, Local 1222* (1975) 49 Cal.App.3d 959, 966 [123 Cal.Rptr. 309]; *Dixon v. Ford Motor Co.* (1975) 53 Cal. App.3d 499, 507 [125 Cal.Rptr. 872]; *Green v. Green* (1963) 215 Cal. App.2d 37, 46 [30 Cal.Rptr. 23]; *Dryer v. Dryer* (1964) 231 Cal.App.2d 441, 451 [41 Cal.Rptr. 839].)

We therefore resolve Pacific's contentions in light of the record before the trial court, considering all relevant evidence.

## C

■ Insofar as the decision not to award the contract was based on the exercise of discretion by the state employees, governmental immunity precludes the imposition of any liability based on a tort theory. (See, *Southern Cal. Acoustics Co. v. C.V. Holder, Inc.* (1969) 71 Cal.2d 719, 727 [79 Cal.Rptr. 319, 456 P.2d 975]; *Swinerton & Walberg Co. v. City of Inglewood-L.A. County Civic Center Authority* (1974) 40 Cal. App.3d 98, 101-104 [114 Cal.Rptr. 834]; *Universal By-Products, Inc. v. City of Modesto* (1974) 43 Cal.App.3d 145, 153-155 [117 Cal.Rptr. 525]; *Rubino v. Lolli* (1970) 10 Cal.App.3d 1059, 1063 [89 Cal.Rptr. 320]; *Old Town Dev. Corp. v. Urban Renewal Agency* (1967) 249 Cal. App.2d 313, 331 [57 Cal.Rptr. 426]; Gov. Code, §§ 820.2, 815.2.) Plaintiff's cause of action seeking damages for the negligent rejection of all bids without ascertaining whether sufficient funding existed and any cause of action for the alleged wrongful rejection of the contract would not be a viable cause of action. (*Rubino v. Lolli* (1970) 10 Cal.App.3d 1059, 1063 [89 Cal.Rptr. 320]; *Old Town Dev. Corp. v. Urban Renewal Agency* (1967) 249 Cal.App.2d 313, 331 [57 Cal.Rptr. 426]; Gov. Code, §§ 820.2, 815.2.)

The determination of the identity of the lowest responsible bidder (Gov. Code, § 14330) and the decision of whether to award the contract to any of the bidders or reject all bids (Gov. Code, § 14335) involves

the exercise of discretion. (*Rubino* v. *Lolli, supra*, 10 Cal.App.3d at p. 1063 (see citations therein).) Hence the statutory immunities provided by Government Code sections 815.2 and 820.2 preclude the imposition of liability on defendants even if, as alleged, there was an abuse of discretion when the determination to reject all bids was made, or even if there was a malicious intent to injure Pacific when the bids were rejected. (*Rubino* v. *Lolli, supra*, 10 Cal.App.3d at p. 1063; see, *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211, 220 [11 Cal.Rptr. 89, 359 P.2d 457]; Gov. Code, §§ 820.2, 815.2, subd. (b).)[3]

## II

■ Pacific contends that the state should be bound to award the contract to the lowest bidder under the theory of promissory estoppel. We disagree.

■ Promissory estoppel is a theory applicable to make binding a promise where: (1) the promisor makes a promise which the promisor should reasonably expect will induce action or forbearance of a definite and substantial character; (2) the promise does induce such action or forbearance by the promisee; and (3) injustice can only be avoided by the enforcement of the promise. (*Drennan* v. *Star Paving Co.* (1958) 51 Cal.2d 409, 413 [333 P.2d 757]; *Universal By-Products, Inc.* v. *City of Modesto, supra,* 43 Cal.App.3d 145, 156; *Swinerton & Walberg Co.* v. *City of Inglewood-L.A. County Civic Center Authority, supra,* 40 Cal. App.3d 98, 104.)

■ "Basic contract law holds that until such time as a bid is accepted, there is no contractual relationship between the bidder and the entity. (See Civ. Code, § 1586; *Old Town Dev. Corp.* v. *Urban Renewal Agency* [(1967)] 249 Cal.App.2d 313, 335 [57 Cal.Rptr. 426]; 1 Witkin, Summary of Cal. Law (8th ed.) Contracts, § 99, pp. 102-103.)" (*Universal By-Products, Inc.* v. *City of Modesto, supra,* 43 Cal.App.3d at p. 155.) ■ Thus, if Pacific is to hold the state liable for dam-

---

[3]We note that it would be possible to assert a viable cause of action for deceit against the state employees if there were an allegation that the state employees asked for a prototype with the knowledge that: (1) all bids would be rejected; (2) that Pacific would act in the belief that the state would *not* reject all bids; and (3) with the intent by the state employees to injure Pacific. (See, *Universal By-Products, Inc.* v. *City of Modesto* (1974) 43 Cal.App.3d 145, 153 [117 Cal.Rptr. 525].) The amended complaint herein, however, does not contain such an allegation.

ages, we must first determine whether a promise to award the contract to the lowest bidder should be implied where the state asks for a prototype. As indicated in the subsequent discussion, we conclude no such promise may be implied.

A bid and the invitation soliciting bids must be evaluated in light of general principles of contract law. (See, *Southern Cal. Acoustics Co.* v. *C.V. Holder, Inc., supra,* 71 Cal.2d 719, 722-723; *Drennan* v. *Star Paving Co., supra,* 51 Cal.2d 409, 413-417; *James Baird Co.* v. *Gimbel Bros.* (2d Cir. 1933) 64 F.2d 344, 346; Comment, *Bid Shopping and Peddling in the Subcontract Construction Industry* (1970) 18 UCLA L.Rev. 389, 389-394.)

"A contract entered into by a governmental body and an individual is to be construed by the same rules which apply to construction of contracts between private persons." (*Oberg* v. *City of Los Angeles* (1955) 132 Cal.App.2d 151, 158 [281 P.2d 591]; *Guntert* v. *City of Stockton* (1974) 43 Cal.App.3d 203, 217 [117 Cal.Rptr. 601]; *Carruth* v. *City of Madera* (1965) 233 Cal.App.2d 688, 696-697 [43 Cal.Rptr. 855]; *Sawyer* v. *City of San Diego* (1956) 138 Cal.App.2d 652, 661 [292 P.2d 233].) "Contracts should receive a reasonable interpretation and one which effectuates the parties' purposes as discerned from the entire agreement; the courts cannot rewrite a contract to avoid difficulty or hardship. (*Addiego* v. *Hill* (1965) 238 Cal.App.2d 842, 846 [48 Cal.Rptr. 240].)" (*Wyandotte Orchards, Inc.* v. *Oroville-Wyandotte Irrigation Dist.* (1975) 49 Cal.App.3d 981, 986-987 [123 Cal.Rptr. 135].)

Plaintiff's thesis that there is in all instances an implied promise to award the contract to the lowest bidder indicates a misconception of the relevant judicial decisions. In *Swinerton & Walberg Co.* v. *City of Inglewood-L.A. County Civic Center Authority, supra,* 40 Cal. App.3d 98, a contract was not awarded to the lowest bidder, but rather to the second lowest bidder. (*Id.,* at p. 101.) It must be emphasized that in *Swinerton* the soliciting agency determined to award the contract and did *not* reject all bids. Thus, although we agree that there was an implied promise to award the contract to the lowest bidder, there was also a condition precedent to that promise in that there was a determination to award the contract to the lowest responsible bidder *if a contract was awarded* (*Swinerton & Walberg Co.* v. *City of Inglewood-L.A. County Civic Center Authority, supra,* 40 Cal.App.3d at p. 104.)

In *Universal By-Products, Inc.* v. *City of Modesto, supra*, 43 Cal. App.3d 145, the court held that where all bids were rejected, the lowest bidder did *not* have a cause of action against the agency soliciting the bids. As stated in *Universal By-Products*: "[I]t is apparent that an inference of a promise to award a contract to the low bidder where the agency misawards the contract to a higher bidder, is far different from inferring a promise to consider the bids before rejection." (*Id.*, at p. 157.)

Furthermore, even if there were no relevant California judicial decisions we would not imply a promise to award a contract as such a holding would be unreasonable.

Plaintiff's assertion that if the state has asked for a prototype it has impliedly promised that it would award the contract to the lowest bidder would render the right of rejection meaningless in situations where the article presented is found not to be in the best interests of the state. (See, Gov. Code, § 14335.) The provision giving the state the right of rejection was obviously inserted in the contract so as to allow the state to meaningfully evaluate the supplied article in terms of whether it accomplished the purposes solicited for in the bid.

"Section 14370 of the Government Code provides in part: 'Every contract awarded under this chapter shall be submitted to the Attorney General or the attorney appointed according to law and authorized to represent the department under which it is to be performed. Such a contract is not binding on the State until the appropriate attorney finds it to be in accordance with the requirements of this chapter, and endorses such finding thereon.' This provision, referring to a written contract as being what is to be approved, necessarily presupposes a document signed by both parties, and it implies that the actual execution of the document is what constitutes the 'award.' But other statutory provisions indicate that execution of the written contract by both parties does not constitute the award. Thus section 14332 of the Government Code provides in part: 'If the director deems it is for the best interests of the State, he may, on the refusal or failure of the successful bidder to execute the contract, award it to the second lowest responsible bidder.' This provision indicates that it is the tender of the written contract by *the state to the successful bidder for execution which constitutes the* 'award.' We think that this latter definition of 'award' is what the Legislature intended. [¶] When bids are opened and read in public, the mere fact that a particular person has made the lowest bid does not

mean that he has been awarded the contract. A contract may be awarded only to the lowest 'responsible' bidder. (Gov. Code, § 14330.)...But even the lowest responsible bidder is not necessarily the successful bidder because all bids may be rejected if 'acceptance of the lowest responsible bid or bids is not for the best interests of the State.' (Gov. Code, § 14335.) Thus until the bids have been analyzed and the requisite discretion exercised, the state cannot award the contract. The consequence is that a contract is seldom, if ever, awarded on the day that bids are opened as section 14330 of the Government Code seems to require." (*Saliba-Kringlen Corp.* v. *Allen Engineering Co.* (1971) 15 Cal.App.3d 95, 107-108 [92 Cal.Rptr. 799].)

We are strongly persuaded by decisions relating to federal procurement bidding. In these decisions, absent an intent to defraud the bidder, preparation costs are not recoverable. (See, *Keco Industries, Inc.* v. *United States* (1970) 428 F.2d 1233, 1237 [176 Ct.Cl. 773, 30 A.L.R. Fed. 334]; *Robert F. Simmons & Associates* v. *United States* (1966) 360 F.2d 962, 964 [175 Ct.Cl. 510].) The rationale behind this rule is that bids and quotations are a normal part of the cost of doing business. In the very nature of things some of these will fail of success. The cost of such unproductive bids is as much a general cost expense of operation as are general administrative, indirect engineering, indirect factory, and other overhead costs. Thus, unless there is an agreement or understanding that the government will pay the cost of preparing a proposal, it is considered to be a voluntary activity of the contractor designed to secure additional business. (See, Appeal of Walutes (1968) Armed Ser. Bd. Contract Appeals No. 11967, 68-2 (CCH) Bd. Cont. Cas. Fed., ¶ 7225, pp. 33556-33557; Appeal of Borg-Warner Corp. (1964) Armed Ser. Bd. Contract Appeals Nos. 9144, 9145, 64 (CCH) Bd. Cont. Cas. Fed., ¶ 4507, pp. 21628-21629, 21632; Appeal of Bell Aircraft Corporation (1950) Armed Ser. Bd. Contract Appeals Nos. 248, 373, 374, 5 (CCH) Cont. Cases Fed., ¶ 61135, pp. 51718, 51719.)

"Moreover, we see no injustice in requiring appellant to bear the expense of preparing its bid; it entered into the bidding procedure with full knowledge of respondent's right to reject the bids if it should choose to do so. As an experienced business entity, appellant must be deemed to have assumed the risk that respondent might act in accordance with its legal right; such a risk is a cost of seeking to do business with a governmental body." (*Universal By-Products, Inc.* v. *City of Modesto, supra,* 43 Cal.App.3d at p. 157.)

We find no implied promise to award the contract to the lowest bidder. Accordingly, there could be no viable cause of action asserted on the basis of a promissory estoppel theory.

### III

■ Plaintiff lastly contends that the trial court abused its discretion in refusing to permit the discovery of allegedly relevant information by issuing a protective order precluding, until after the summary judgment hearing, deposing the state employees who evaluated the bids and determined to reject all bids.

Although we concede that ordinarily a trial court must defer a decision on summary judgment until such time as the party resisting the motion has had a reasonable opportunity to discover facts which may be relevant to opposing the motion (*Raitport* v. *National Bureau of Standards* (E.D.Pa. 1974) 385 F.Supp. 1221, 1226; *Carter* v. *Jernigan* (Iowa 1975) 227 N.W.2d 131, 135 (see citations therein); *Monmouth Lumber Co.* v. *Indemnity Ins. Co.* (1956) 21 N.J. 439 [122 A.2d 604, 609]; *Mosher* v. *Rowland Distributors, Inc.* (1962) 15 App.Div.2d 934 [225 N.Y.S.2d 883, 884]; *Lori-Jay Knitting Mills, Inc.* v. *Columbia Knitting Mills, Inc.* (1960) 21 Misc.2d 537 [195 N.Y.S.2d 728, 728-729]; *Bartels* v. *Rubel Corp.* (1954) 205 Misc. 673 [129 N.Y.S.2d 355, 357]), we do not find any error occasioned by the trial court's issuance of a protective order postponing the depositions of the employees who rejected all bids, as their state of mind was not a relevant issue to the case.

Pacific argued it had been damaged because of an alleged implied promise by the state not to reject all bids after asking for a prototype.

Inasmuch as plaintiff claimed that damage was occasioned by expenditures in reliance upon an implied promise not to reject all bids, the actual reason the contract was subsequently rejected was not a material issue for some of Pacific's expenditures had already been incurred when the letter stating that all bids were rejected was sent. The mere fact that the wrong reason was given for the rejection cannot have caused injury to Pacific. Thus, plaintiff cannot assert a viable cause of action for fraud based on that alleged misrepresentation.[4] (See, *Ito* v. *Watan-*

---

[4]Therefore, plaintiff's second contention on appeal that it could assert a viable cause of action for intentional misrepresentation fails.

*abe* (1931) 213 Cal. 487, 489 [2 P.2d 799]; *Pepper* v. *Underwood* (1975) 48 Cal.App.3d 698, 713 [122 Cal.Rptr. 343]; *Teacher* v. *Leddel* (1966) 247 Cal.App.2d 95, 97 [55 Cal.Rptr. 271]; *Brownlee* v. *Vang* (1965) 235 Cal.App.2d 465, 473 [45 Cal.Rptr. 458]; *King* v. *Miller* (1950) 97 Cal.App.2d 702, 703 [218 P.2d 554].) As the information Pacific sought to discover related to the state of mind of the state employees when they made the statement the contract was rejected, it was not a material issue and the trial court properly limited discovery seeking to ascertain this immaterial information. (Evid. Code, §§ 320, 352; *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 79 [137 Cal.Rptr. 863, 562 P.2d 1022]; *Fuentes* v. *Tucker* (1947) 31 Cal.2d 1, 7 [187 P.2d 752]; *Brokopp* v. *Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853 [139 Cal.Rptr. 888, 93 A.L.R.3d 537].) Issuance of a protective order is proper where the complaint fails to state a cause of action. (*Silver* v. *City of Los Angeles* (1966) 245 Cal.App.2d 673, 676 [54 Cal.Rptr. 203]; Code Civ. Proc., § 2019, subd. (b)(1).) Hence, the trial court properly exercised its discretion in refusing to allow discovery of irrelevant information which would neither be helpful for preparation for trial nor lead to evidence admissible at trial. (*Southern California Edison Co.* v. *Superior Court* (1972) 7 Cal.3d 832, 840-841 [103 Cal.Rptr. 709, 500 P.2d 621]; *Matchett* v. *Superior Court* (1974) 40 Cal.App.3d 623, 627 [115 Cal.Rptr. 317]; see, *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652, 655-656 [125 Cal.Rptr. 553, 542 P.2d 977]; *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 172-173 [84 Cal.Rptr. 718, 465 P.2d 854]; Code Civ. Proc., § 2016.)

The judgment is affirmed.

Puglia, P. J., and Janes, J., concurred.