[Civ. No. 21400. Third Dist. Oct. 28, 1982.]

NATIONAL COACH CORPORATION, Plaintiff and Appellant, v. STATE BOARD OF CONTROL et al., Defendants and Respondents; SUPERIOR TRANS MED, Intervener and Respondent.

**COUNSEL**

Donald D. Harmata for Plaintiff and Appellant.

George Deukmejian, Attorney General, Richard D. Martland, Assistant Attorney General, and Mary C. Michel, Deputy Attorney General, for Defendants and Respondents.

Diepenbrock, Wulff, Plant & Hannegan, Dennis R. Murphy and Thomas G. Mouzes for Intervener and Respondent.

OPINION

**BLEASE, J.**—National Coach Corporation is a disappointed low bidder on a state contract to provide buses. National's bid was rejected for deviating from the contract specifications. National filed a protest (see Gov. Code, § 14813) with the State Board of Control that was rejected after hearing. National then filed a petition for review of the board decision in administrative mandamus. The trial court ruled in favor of the board. National appeals. ■ ■■■■ We affirm.[1]

*Facts*

The State Office of Procurement issued an invitation for bid for 46 buses equipped with wheelchair lifts. The buses were to be purchased on behalf of the Department of Aging. The specifications for the vehicles provided that the bottom step of the front passenger stepwell "shall not exceed 13 inches from street." Bidders were required to list all deviations from specifications.

National submitted a bid of $1,149,748, the lowest aggregate cost. However, it noted on the specification compliance questionnaire that its bid did not comply with the specifications. It listed as a deviation that "The Bottom Step will be 15" from ground, not 13"." The Office of Procurement discussed the deviation with the Department of Aging and both concurred in a determination that National's bid failed to meet a material specification and should be rejected.

The chief of procurement notified National by telegram that its bid was rejected "on the basis you are not the lowest bidder meeting specifications." National filed a protest of this decision with the State Board of Control. On November 17, 1981, a hearing was conducted to take evidence concerning National's protest.

---

[1]We deny respondents' and intervener's 11th hour motions to dismiss the appeal. They contend the appeal is moot because the contract has been let and partially performed. (Cf. *Crangle* v. *City Council of Crescent City* (1933) 219 Cal. 239 [26 P.2d 24]; *Roscoe* v. *Goodale* (1951) 105 Cal.App.2d 271 [232 P.2d 879].) Their thrust is this factual development renders the case an abstract controversy and that we should avoid resolution of abstractions. However, the proposed cure is worse than the disease. The precedents upon which they rely antedate the development of possible quasi-contractual remedies for breach of the statutory obligation to award contracts to the lowest responsible bidder. (See *Swinerton & Walberg Co.* v. *City of Inglewood—L.A. County Civic Center Authority* (1974) 40 Cal.App.3d 98 [114 Cal.Rptr. 834].) Resolution of this case may impact via collateral estoppel on any other remedy available to National. We imply no substantive views on the merits of such possibilities. Granting the motion to dismiss for mootness involves determination as a matter of law that a disappointed bidder has no other cognizable claim once the contract has been let and performance commenced. Such a determination bears a higher measure of injudicious resolution of abstractions than is occasioned by affording National its full day in court.

Documentary evidence and testimony were taken. The essential documents were the invitation for bid, National's bid, and the subsequent communications. National's manager, James Zampetti, testified the deviation was caused by a misunderstanding within the company. They have two product lines, one for ambulatory passengers with a fifteen-inch step, another for handicapped and elderly with a thirteen-inch step. (The specification error was generated in the engineering department which unfortunately had a number of new employees.) Zampetti explained that if the contract were awarded to National it would provide vehicles with a thirteen-inch step height.

Mr. John Babich, the chief of procurement, testified that the thirteen-inch step height specification had been prepared by the Office of Aging in conjunction with the Department of Transportation. It was determined that this step height was required for this variety of bus. This standard was customary in the industry. After argument, the hearing was adjourned. On November 20, 1981 National received written notice that its protest had been rejected by the board. On January 12, 1982, after National's unsuccessful petition in the trial court, the contract was awarded to Superior Trans Med.

*Discussion*

I

With limited exceptions, all significant purchases of goods and services by state agencies are accomplished by soliciting bids. (See, e.g., Gov. Code, § 14807.) The bids are sealed and opened publicly at the time set forth in the request for bids. (Gov. Code, § 14811.) In the absence of a decision to reject all bids (see *Pacific Architects Collaborative* v. *State of California* (1979) 100 Cal.App.3d 110, 123 [166 Cal.Rptr. 184]) any purchase of $5,000 or more "shall be made . . . with the lowest responsible bidder meeting specifications." (Gov. Code, § 14807.)

If the agency decides to award the contract to another bidder it must provide notice to the low bidder by telegram 24 hours prior to the award. (Gov. Code, § 14813.)[2] If the low bidder files a protest prior to an award the Board of Control must make "a final decision as to the action to be taken relative to the protest." (*Ibid.*)

---

[2] Government Code section 14813 provides: "Whenever a contract or purchase order under this article is not to be awarded to the lowest bidder, such bidder shall be notified by telegram 24 hours prior to awarding the contract or purchase order to another bidder. Upon written request by any bidder who has submitted a bid, notice of the proposed award shall be posted in a public place in the offices of the department at least 24 hours prior to awarding the contract or purchase order. *If* prior to making the award, *any bidder* who has submitted a bid *files a protest* with the department against the awarding of the contract or purchase order on the ground that he is the lowest responsible bidder meeting specifications, *such contract or purchase order shall not be*

■ National argues without dissent that the decision of the Board of Control is reviewable in administrative mandamus proceedings pursuant to Code of Civil Procedure section 1094.5. We agree. While the statute does not explicitly direct that the board make a final decision based on an adjudicative hearing, this is implicit. The Board of Control is an adjudicative body and referral of the protest to it for resolution betokens an expectation of such resolution. (See Gov. Code, § 13900 et seq.) Moreover, the board is granted by statute the authority to adopt regulations "[g]overning such matters as are specifically committed to its jurisdiction." (Gov. Code, § 13920.) By regulation it has conferred a hearing right on all low bid protestors with claims not frivolous or facially unmeritorious. (Cal. Admin. Code, tit. 2, §§ 870-876.) Accordingly, we deem the decision on protest of award was "made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in [an] inferior tribunal," and appropriate for review in administrative mandamus proceedings. (Code Civ. Proc., § 1094.5.)

## II

Preliminary to consideration of the merits of National's protest we address two contentions of procedural error in the conduct of the administrative proceedings. National contends the board is not impartial because the Director of the Department of General Services is a member as well as the administrative superior of the chief of procurement. National also contends the board was prejudicially misled during the hearing concerning its authority to make an independent decision. These procedural contentions have no merit.

■ National asserts participation by the Director of the Department of General Services in board adjudication of bid protests offends due process. The claim of inconsistent function is insufficient to warrant extended discussion on this record. There is no due process violation presented per se when a government agency conducts both an initial decision and a subsequent adjudicative review. (See e.g., *McCullough* v. *Terzian* (1970) 2 Cal.3d 647, 655 [87 Cal.Rptr. 195, 470 P.2d 4, 47 A.L.R.3d 266]; see 2 Davis, Administrative Law Treatise (1958) ch. 13, Separation of Functions.) A fortiori, the bare allegation presented here must fail. Similarly the related undeveloped allegation that participation by the agency's in-house legal department in separate functions violates due process is also inadequate. (E.g., *Rowen* v. *Workers' Comp. Appeals Bd.* (1981) 119 Cal.App.3d 633, 641 [174 Cal.Rptr. 185].)

*awarded until either the protest has been withdrawn or the Board of Control has made a final decision as to the action to be taken relative to the protest.* In computing the 24-hour periods provided for in this section Saturdays, Sundays and legal holidays shall be excluded. [¶] Within 10 days after filing a protest, the protesting bidder shall file with the Board of Control a full and complete written statement specifying in detail the ground of the protest and the facts in support thereof." (Italics added.)

■ National's second procedural contention that the board was misled concerning its proper role is also unpersuasive. It is based on remarks of the Chief Counsel of the Department of General Services. At the outset of the hearing, at the request of the hearing officer, the chief counsel explained his perception of the board's role in bid protest proceedings. The gist of his remarks was the board decides if there is substantial evidence that the decision of the procurement officer was reasonable. Thereafter, National's counsel contended this formulation was incorrect and that the board was obliged to render an independent decision. At that point the matter died.

The board could not have accepted the chief counsel's remarks literally. It afforded National an apparent evidentiary hearing de novo, which focused on the discussion of the materiality of the contract deviation. On the other hand, the chief counsel's remarks certainly were a misstatement of the board's *authority* under Government Code section 14813. However, National did not seek a ruling from the hearing officer on the point and made no objection to the sufficiency of the board's findings in its pleadings in the trial court. In light of these considerations and the poverty of National's claim on the merits (see sec. III, *infra*) we decline to hold any probability exists that the challenged remarks adversely affected the outcome of the protest hearing. No miscarriage of justice was engendered by these remarks. On this record no reasonable probability exists that a different result would have been obtained in their absence. Accordingly, we hold National's contention does not rise to the level of reversible error. (Cal. Const., art. VI, § 13.)

### III

■ National's essential contention on the merits is that the two-inch deviation from specifications is insubstantial.[3] Rather than a tedious point by point rebuttal of each unpersuasive argument in support of this contention we restate the obvious basis of rejection of the protest. The buses were procured for use by elderly and handicapped persons. The customary step height for this clientele is 13 inches, a fact implicitly acknowledged by National's manager. We may infer that stepping two inches higher is not an insignificant inconvenience for a

---

[3]National also argues its postopening offer to meet the 13-inch specification cured any defect in its bid. National wisely eschews a frontal assault on the weight of precedent holding that, ordinarily, bids may not be modified after opening. (See Annot. (1930) 65 A.L.R. 835, Bidder's variation from specifications on bid for public work.) If this were not the rule a speculating low bidder could salt his bid with deviations ready to waive them only if the calculations of the other bidders revealed the desirability of the enterprise. National does attempt an envelopment, relying on 10 McQuillin, Municipal Corporations (3d ed. 1981) § 29.68, Modification of bids: "While bids cannot be changed in substance after presentation and the lapse of the designated time for opening the bids, mere irregularities in form may after the opening be corrected or disregarded." (Fns. omitted.) However, this contention is dependent on a finding the modification was not substantial and therefore ultimately raises no different claim than that considered in the text.

significant number of elderly and disabled persons. (Cf. *Aries Dev. Co.* v. *California Coastal Zone Conservation Com.* (1975) 48 Cal.App.3d 534, 545 [122 Cal.Rptr. 315].)

National's argument that these people should use the wheelchair lift to enter the buses merits no response. The argument that the competitive advantage to the bidder should be the sole criterion for evaluating the substantiality of a deviation from contract specifications is not much better. A bid specification for horses cannot be met by cows even if they are equally expensive to procure. Finally, the suggestion that the state was under an affirmative obligation to prove the substantiality of the deviation from specifications by establishing the necessity of the specification is misplaced. The appropriate party to bear that burden is the protestor. (See Evid. Code, § 500; Deering Cal. Administrative Mandamus (Cont.Ed.Bar 1966) § 5.23, p. 49.) The remaining arguments have no merit.

The judgment is affirmed.

Regan, Acting P. J., and Carr, J., concurred.